UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ARSENIO TORRES,

    Plaintiff,

v.

BOROUGH OF BARRINGTON, et al.,

    Defendants.

1:16-cv-06134-NLH-JS

**OPINION**

**APPEARANCES**:

RANDY P. CATALANO
401 KINGS HIGHWAY SOUTH
SUITE 4A
CHERRY HILL, NJ 08034
    On behalf of Plaintiff

TIMOTHY R. BIEG
MADDEN & MADDEN
108 KINGS HIGHWAY EAST, SUITE 200
P.O. BOX 210
HADDONFIELD, NJ 08033-0389
    On behalf of Defendants Borough of Barrington and Chief David Roberts

LINDA A. GALELLA
PARKER MCCAY P.A.
9000 MIDLANTIC DRIVE
SUITE 300
MOUNT LAUREL, NJ 08054
    On behalf of Defendants Sergeant Michael Minardi and Patrolman Patrick D'Ascenzo

**HILLMAN, District Judge**

    This case involves claims of Fourth Amendment violations by two Borough of Barrington police officers, and claims of municipal liability against Barrington and its police chief for

having a policy and custom of condoning such violations, particularly where the individual is of Hispanic descent. Presently before the Court are the motions of all the Defendants for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) for Plaintiff's claims of false arrest, false imprisonment, malicious prosecution, and conspiracy.[1]  For the reasons expressed below, Defendants' motions will be granted in part and denied in part.

**BACKGROUND**

According to his complaint, on October 1, 2014, Plaintiff, Arsenio Torres, who is of Hispanic descent, was sitting in a car with his girlfriend, Tiffany Vitale, in the parking lot of his apartment complex in Barrington, New Jersey.  Defendants, Barrington police sergeant Michael Minardi and patrolman Patrick D'Ascenzo, approached Plaintiff's car.  Plaintiff claims that even though they had no reason to suspect him of engaging in any illegal activity, the officers ordered him out of the car. Plaintiff claims that the officers used excessive force to seize him and lacked probable cause to arrest him for aggravated assault, resisting arrest, obstruction of law, violent behavior, and offensive language.  Plaintiff claims that he was transported to the hospital for treatment of his injuries prior

---

[1] Defendants have not moved to dismiss Plaintiff's claims relating to his allegations of excessive force.

to being remanded to the Camden County Correctional Facility. Plaintiff claims that all the criminal charges against him were ultimately dismissed except for one of the charges.[2]

Based on those events, Plaintiff claims that Minardi and D'Ascenzo violated his Fourth Amendment rights and his rights under the New Jersey Civil Rights Act ("NJCRA") by stopping and arresting him without probable cause, by using excessive force to effect his arrest, and for malicious prosecution. He also claims that the two officers were negligence, committed assault and battery, and conspired in violation of New Jersey state law. Plaintiff further claims that the Borough of Barrington, and the Chief of Police, David Roberts, are liable for constitutional and NJCRA violations because they had a policy and custom of failing to investigate police misconduct and failed to train its officers on the proper use of force and the concept of probable cause, particularly with regard to minorities.

All the defendants filed answers to Plaintiff's complaint, and they now move for judgment in their favor, pursuant to Fed. R. Civ. P. 12(c), on all of his claims except those relating to

---

[2] As discussed below, the complaint does not contain any detail as to what type of force was allegedly used on Plaintiff, what his injuries were, which criminal charge was not dismissed, or what the disposition was of that remaining charge. The Complaint is similarly lacking in any factual allegations that would make plausible a claim that Plaintiff was mistreated because of his ethnicity.

3

his claims of excessive force.  Plaintiff has opposed Defendants' motions.

## DISCUSSION

### A. Subject matter jurisdiction

Plaintiff has brought his claims pursuant to 42 U.S.C. § 1983 and New Jersey state law.  This Court has jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331, and supplemental jurisdiction of Plaintiff's state law claims under 28 U.S.C. § 1367.

### B. Standard for Judgment on the Pleadings

A Rule 12(c) motion for judgment on the pleadings may be filed after the pleadings are closed.  Fed. R. Civ. P. 12(c); Turbe v. Gov't of V.I., 938 F.2d 427, 428 (3d Cir. 1991).  In analyzing a Rule 12(c) motion, a court applies the same legal standards as applicable to a motion filed pursuant to Rule 12(b)(6).  Turbe, 938 F.2d at 428.  Thus, a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff.  Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005).

A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'"  Bell Atlantic v. Twombly, 127 S. Ct. 1955, 1969 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974));

4

see also Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (stating that the "Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element"). A court need not credit either "bald assertions" or "legal conclusions" in a complaint when deciding a motion to dismiss. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997). The defendant bears the burden of showing that no claim has been presented. Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005) (citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).

**C.   Analysis**

All the defendants have moved for judgment in their favor on Plaintiff's claims arising out of his allegation that he was detained and arrested without probable cause and faced malicious prosecution, arguing that those claims are barred by Heck v. Humphrey, 512 U.S. 477 (1994). In Heck v. Humphrey, the Supreme Court held that a § 1983 claim for damages premised on a civil rights violation is barred if the suit is inconsistent with or

5

would undermine the lawfulness of a state conviction or sentence. The Supreme Court explained:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

Heck, 512 U.S. at 486 (footnotes omitted).

Defendants relate in their briefs that Plaintiff pleaded guilty to N.J.S.A. 2C:33-2(b), which provides:

> "Offensive language. A person is guilty of a petty disorderly persons offense if, in a public place, and with purpose to offend the sensibilities of a hearer or in reckless disregard of the probability of so doing, he addresses unreasonably loud and offensively coarse or abusive language, given the circumstances of the person present and the setting of the utterance, to any person present."

In order to maintain his false imprisonment, false arrest, and malicious prosecution claims, Plaintiff must show that he

6

was seized, arrested, and prosecuted without probable cause. See James v. City of Wilkes-Barre, 700 F.3d 675, 680 (3d Cir. 2012) (citations omitted) ("To state a claim for false arrest under the Fourth Amendment, a plaintiff must establish: (1) that there was an arrest; and (2) that the arrest was made without probable cause."); Wright v. City of Philadelphia, 409 F.3d 595, 602 (3d Cir. 2005) (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964) (citations omitted)) (just like with a false arrest claim, a claim for false imprisonment is that a seizure is made without probable cause); Johnson v. Bingnear, 441 F. App'x 848, 851 (3d Cir. 2011) (quoting McKenna v. City of Philadelphia, 582 F.3d 447, 461 (3d Cir. 2009)) ("In order to prevail on a Constitutional claim of malicious prosecution, a plaintiff must demonstrate that: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.").

An officer has probable cause to arrest when "the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the

7

person to be arrested." Wilson v. Russo, 212 F.3d 781, 789 (3d Cir. 2000).

Defendants argue that because Plaintiff was arrested for using offensive language and he pleaded guilty to using offensive language, he cannot demonstrate that Defendants lacked probable cause to seize, arrest, and prosecute him for violating the New Jersey law prohibiting the use of offensive language. Defendants argue that a finding in Plaintiff's favor on his false imprisonment, false arrest, and malicious prosecution claims would impermissibly imply the invalidity of his conviction, and those claims are therefore barred.

In opposition to Defendants' motions, Plaintiff argues that his claims arising from his allegations of excessive force are not barred by Heck. He also argues that Defendants did not have probable cause to make the initial stop, and his guilty plea to the "offensive language" offense does not bar any claims based on that unlawful seizure.

As Defendants point out in their reply briefs, they have not moved for judgment on Plaintiff's excessive force claims.³

---

³ Although the issue is not before the Court, Heck does not usually bar excessive force claims. See, e.g., Garrison v. Porch, 376 F. App'x 274, 278 (3d Cir. 2010) (finding that Heck did not bar Plaintiff's excessive force claim even though he pleaded guilty to simple assault on a police officer, explaining that even though "the fact that Garrison was acting in an unruly and threatening manner certainly factors into the totality of the circumstances and may have justified a greater use of force

8

Defendants also point out that Plaintiff provides no argument to refute that his conviction for one of the offenses he was arrested for demonstrates that the officers had probable cause for his arrest, which defeats his false imprisonment, false arrest, and malicious prosecution claims. Defendants therefore argue that they are entitled to judgment on all of Plaintiff's claims except those that concern the officers' use of force.

The Court agrees that Plaintiff's false arrest[4] and malicious prosecution claims are barred by Heck because Plaintiff's conviction for N.J.S.A. 2C:33-2(b) shows that Defendants had probable cause to arrest and charge Plaintiff for using offensive language in a manner prohibited by the statute.[5]

---

than would have been reasonable had Garrison been peaceful and cooperative, it certainly did not dispense with the reasonableness requirement altogether").

[4] The constitutional tort of false imprisonment overlaps with false arrest. See Wallace v. Kato, 549 U.S. 384, 388 (2007). When a person is arrested without probable cause, the constitutional tort of "false imprisonment ends once the victim becomes held pursuant to [legal] process – when, for example, he is bound over by a magistrate or arraigned on charges. . . . If there is a false arrest claim damages for that claim covers the time of detention up until issuance of process or arraignment, but not more. From that point on, any damages recoverable must be based on a malicious prosecution claim and on the wrongful use of judicial process rather than detention itself." Id. at 389-90 (citations and internal quotation marks omitted).

[5] As noted above, Plaintiff's complaint does not indicate which charge was not dismissed, but he admits in his opposition brief that he pleaded guilty to N.J.S.A. 2C:33-2(b) for "offensive language."

9

A finding in favor of Plaintiff on his false arrest and malicious prosecution claims would impermissibly undermine his guilty plea to the offensive language charge. See, e.g., Marable v. West Pottsgrove Tp., 176 F. App'x 275, 279, 281 (3d Cir. 2006) (affirming the dismissal of the plaintiff's false arrest claims under Heck where the plaintiff was arrested for aggravated assault on a police officer and pleaded guilty to a disorderly persons offense, finding that an award of damages pursuant to the false arrest claim would require a finding that the plaintiff had been unlawfully detained, and such a finding would be sharply at odds with the fact of the plaintiff's conviction of the disorderly persons offense); Menke v. Baker, 2012 WL 2339825, at *8 (D.N.J. 2012) (citing Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001)) (where a plaintiff was arrested for disorderly conduct and possession of a controlled dangerous substance and pleaded guilty only to a violation of a municipal ordinance, because an officer may make an arrest where he has probable cause to believe an individual has committed even a very minor offense in his presence, and because the plaintiff admitted to misconduct in violation of the ordinance, a finding that there was no probable cause would imply the invalidity of the plaintiff's admission of guilt and his conviction, and the plaintiff's unlawful arrest claim must therefore be dismissed in accordance with Heck); Johnson v. De

Prospo, 2010 WL 5466255, at *2 (D.N.J. 2010) (where the plaintiff was arrested and indicted for 17 counts and he pleaded guilty to only one of those counts, holding that the plaintiff's false arrest claim was barred by Heck because a finding that he was arrested without probable cause would necessarily suggest the invalidity of plaintiff's plea and sentence). Thus, Defendants are entitled to judgment in their favor on those claims, including Plaintiff's conspiracy claim arising from his false arrest and malicious prosecution claims.

However, we do not construe Defendants' motion to assert that Heck alone bars any claim based on the invalidity of the initial stop and its scope. Plaintiff's complaint, which is rather bare-bones and inartfully pled,[6] does not relate whether

---

[6] The Court queries whether Plaintiff's complaint would have survived a motion to dismiss pursuant to Rule 12(b)(6), or a Rule 12(c) motion on all of Plaintiff's claims, due to its dearth of facts, but because Defendants filed an answer to Plaintiff's complaint and have only moved for judgment on some of Plaintiff's claims, the Court need not resolve that question. We do note that the analysis of Defendants' motions is complicated by the lack of clarity and organization in Plaintiff's complaint. For example, Counts One through Three are not Counts at all in the sense they do not assert legal claims but allege jurisdiction, venue, parties and overall facts. The substantive claims begin with Count Four and extend through Count 10 but often conflate legal theories. For example, Court Four lumps together numerous Fourth Amendment theories including the distinct theories of false arrest and excessive force. While this does not technically violate Fed. R. Civ. P. 8, it renders a Rule 12 analysis of such claims more difficult. For present purposes, it should be clear to the parties that the Court's dismissal of Plaintiff's false arrest/false imprisonment and malicious prosecution claims, as

11

the officers informed Plaintiff of the reason they "confronted" him and "ordered him out of the vehicle." (Compl. ¶ 16.) Plaintiff's brief in opposition to Defendants' motions contains more detail about the encounter than his complaint, including the time of the incident (9:30 a.m.), that he was sprayed with mace repeatedly even after he was secured in the police vehicle, the specific five offenses for which he was charged, and the fact that he pleaded guilty to N.J.S.A. 2C:33-2(b). (Docket No. 28 at 4-6.) Plaintiff's brief also states that he was forcibly removed from his parked vehicle because he refused to present identification when requested. (Id. at 4.)

Under the Fourth Amendment, the nature of an investigatory stop is different from an arrest. See Black v. Montgomery County, 835 F.3d 358, 364 (3d Cir. 2016) (explaining that the Supreme Court in Terry v. Ohio, 392 U.S. 1, 19 n.16, forged a general definition of the meaning of seizure: "when [an] officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen," and that "while an officer merely asking a citizen questions may not be a seizure, circumstances indicating a seizure might include the threatening presence of several officers, the display of a

---

well as any conspiracy claim based on those legal theories, applies to any and all of Counts Four through Ten which could be fairly read to assert such claims.

weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled") (citing Brendlin v. California, 551 U.S. 249, 255 (2007) ("The law is settled that in Fourth Amendment terms a traffic stop entails a seizure of the driver even though the purpose of the stop is limited and the resulting detention quite brief."); United States v. Mendenhall, 446 U.S. 544, 554 (1980) (holding that no seizure occurred when agents approached a person to ask questions in a public place, and the agents identified themselves but did not display weapons, did not place demands upon the person, and were not wearing uniforms)) (other citations omitted); United States v. Rosales, --- F. App'x ---, 2017 WL 1400460, at *2 (3d Cir. April 19, 2017) (citing Illinois v. Wardlow, 528 U.S. 119, 123 (2000) (citing Terry, 392 U.S. at 30)) (internal quotations omitted) ("Where [] authorities conduct a brief investigatory stop without a warrant, the seizure is permissible under the Fourth Amendment if the officers acted with reasonable, articulable suspicion that criminal activity is afoot. Reasonable suspicion is a less demanding standard than probable cause, but requires at least a minimal level of objective justification; the officer must be able to articulate more than an inchoate and unparticularized suspicion or hunch of criminal activity.").

Additionally, an officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause," because "the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action." Devenpeck v. Alford, 543 U.S. 146, 152–53 (2004) (citations omitted).

Here, it is implied in Plaintiff's complaint, and stated in Plaintiff's opposition brief, that his "offensive language" did not occur until he was "made angry by the confrontation and violation of his civil rights." (Id. at 8.) But it is not clear whether Plaintiff's initial stop constitutes a Fourth Amendment seizure, and it is not clear whether the basis for that stop or seizure was related to Plaintiff's use of offensive language, for which he was arrested and convicted.

As the Third Circuit has instructed, not all constitutional claims arising from an arrest and prosecution are subject to the Heck bar, and a determination as to whether Heck applies to a Fourth Amendment claim requires a case-by-case fact-based inquiry. Flood v. Schaefer, 240 F. App'x 474, 476 (3d Cir. 2007) (citing Gibson v. Superintendent, 411 F.3d 427, 447–49 (3d Cir. 2005)). Thus, because the circumstances of Plaintiff's

14

initial encounter with Defendants cannot be determined on the pleadings alone, the Court cannot determine at this time whether Heck bars Plaintiff's Fourth Amendment violation claim arising from the initial encounter.

## CONCLUSION

Because it is clear from the pleadings that Plaintiff's claims arising from his arrest and prosecution would imply the invalidity of his guilty plea to N.J.S.A. 2C:33-2(b), Defendants are entitled to judgment on all of Plaintiff's claims, including his conspiracy claims, that pertain to his arrest and prosecution. The remainder of Plaintiff's claims against Defendants arising from his initial encounter with the defendant officers, as well as his claims relating to the defendant officers' alleged use of excessive force, may proceed.

An appropriate Order will be entered.


Date: July 27, 2017                    s/ Noel L. Hillman
At Camden, New Jersey                  NOEL L. HILLMAN, U.S.D.J.